260 So.2d 259 (1972)
Robert A. GEORGE, Appellant,
v.
Margaret Johnson STONE, Executrix of the Estate of William Johnson, Deceased, and Allstate Insurance Company, Appellees.
No. 71-182.
District Court of Appeal of Florida, Fourth District.
April 7, 1972.
*260 Sam Daniels and Guilmartin, Gaine & Gaine, Miami, for appellant.
H. Eugene Fischer, of Fischer, Hinckley & Shores, Fort Lauderdale, for appellee Allstate Insurance.
CROSS, Judge.
Appellant-plaintiff, Robert A. George, appeals a summary final judgment entered in favor of appellee-defendant, Allstate Insurance Company, in an action for personal injuries allegedly caused by Allstate's deceased insured, William Johnson. We reverse.
Plaintiff is a doctor who, in 1968, was treating William Johnson's mother-in-law, a Mrs. Mee. On June 10, 1968, plaintiff visited Mrs. Mee at the nursing home where she was confined. William Johnson was present during the doctor's visit, and suddenly and without warning pulled a gun, shot and killed Mrs. Mee, shot plaintiff twice, severely wounding the doctor, and finally Johnson committed suicide by shooting himself in the head.
Defendant-Allstate Insurance Company had issued an insurance policy to Johnson which provided, among other things, that Allstate would pay all damages which the insured should become legally obligated to pay because of bodily injury sustained by any person. The policy further provided that this coverage did not apply to any injury *261 "caused feloniously or intentionally by or at the direction of an Insured... ."
The complaint filed by the plaintiff alleged that on the date of the shooting, Mr. Johnson had become so mentally disturbed that without any warning, notice or provocation, Mr. Johnson suddenly had a firearm in his hand with which he proceeded to kill Mrs. Mee, shoot plaintiff twice, and finally kill himself.
Allstate filed a motion for summary judgment, contending that Johnson had intentionally and feloniously injured plaintiff, and that the policy coverage therefore did not apply under the exclusionary provision set forth above. Plaintiff's opposition to the motion rested upon the contention that Johnson was insane at the time of the shooting, and thus incapable of forming the requisite intent. The trial court granted Allstate's motion, and summary final judgment was entered in favor of Defendant-Allstate Insurance Company. This appeal then followed.
We have for determination (1) whether the exception clause is inoperative, and the insurer liable, where the injury was caused by an insane act on the part of the perpetrator; and (2) if so, whether there is in the instant case a genuine issue of material fact as to the sanity vel non of the insured, barring the entry of summary judgment.
Clauses excluding coverage for losses caused by intentional wrongful acts, often called "intentional injury exclusion clauses." are common in various types of insurance contracts, and are generally accepted as valid limitations on liability. Annot., 2 A.L.R.3d 1238. See also Butler v. Peninsular Life Insurance Company, Fla.App. 1959, 115 So.2d 608. However, the issue of the effect of the purported insanity of the tortfeasor on such an exclusion clause has not been determined in Florida. Notwithstanding, two different lines of thought have developed on this issue in other jurisdictions.
One line of cases holds that if the particular injury is the result of an insane act, the intentional injury exclusion clause is inoperative and the insurer is liable. This line of cases is exemplified by Ruvolo v. American Casualty Company, 1963, 39 N.J. 490, 189 A.2d 204, and the cases there cited. In Ruvolo, the New Jersey court stated:
"In applying the exclusory provision, however, whether in a life, accident, liability or fire policy, it has come to be commonly accepted that where the death or loss involved, be it of the insured or caused by the insured, is the product of an insane act, recovery is not barred. [citations omitted.]
"... .
"We hold that if the insured was suffering from a derangement of his intellect which deprived him of the capacity to govern his conduct in accordance with reason, and while in that condition acting on an irrational impulse he shot and killed [the victim], his act cannot be treated as `intentional' within the connotation of the defendant's insurance contract."
See also Rosa v. Liberty Mutual Insurance Company, D.Conn. 1965, 243 F. Supp. 407.
The other line of authority holds that an injury inflicted by an insane person is "intentionally inflicted" where the actor understands the physical nature and consequences of the act, and had a purpose and intention to cause the injury, although he was mentally incapable of distinguishing right from wrong. In other words, a person may intentionally do a thing although he does not know right from wrong. In Colonial Life & Accident Insurance Company v. Wagner, Ky.App. 1964, 380 S.W.2d 224, it was stated:
"... a person may be excused from penalty if he is insane at the time he commits a criminal act. He may do the act with every intention of consummating it, but if it is shown that he was mentally *262 insufficient, he is excused from the imposition of the usual sanctions. The absence of punishment, however, does not retrospectively expunge the original intention."
See also Deloache v. Carolina Life Insurance Company, 1958, 233 S.C. 341, 104 S.E.2d 875.
In the instant case, we determine that where the tortfeasor's mental state is such that he may be deemed insane, in the accepted legal sense of the word, the better rule is that an injury caused by an insured while in that condition cannot be considered to have been caused feloniously and intentionally within the connotation of the words as used in an intentional injury exclusion clause. If Mr. Johnson, the insured in the instant case, was suffering from a derangement of his intellect which deprived him of the capacity to govern his conduct in accordance with reason, and while in that condition acting on an irrational impulse he shot and injured plaintiff, his act was not intentional within the meaning of the exclusionary clause. Ruvolo v. American Casualty Company, supra; 1A J. Appleman, Insurance Law & Practice, §§ 481-2 (1965); 10 Couch on Insurance 2d § 41:667 (1962).
The principle set forth above comports with the guiding principle of insurance law that exclusionary provisions are to be strictly construed against the insurer, and in favor of providing coverage in order that the purpose of insurance not be defeated. E.g., Michigan Mutual Liability Company v. Mattox, Fla.App. 1965, 173 So.2d 754. Therefore, if the insured is shown to have been insane at the time he shot and injured plaintiff, then the exclusion clause is inoperative.
We turn next to determine whether there is any genuine issue of material fact as to whether the insured was insane at the time of the shooting. The strictures surrounding the use of summary judgment procedure are too well known to require extensive citation. Even if the evidence as to a fact issue is undisputed, if such evidence is reasonably susceptible of conflicting inferences, summary judgment is inappropriate. E.g., Graff Enterprises v. Canal Insurance Company, Fla.App. 1968, 213 So.2d 738.
In the instant case, the complaint alleged that the insured "became so mentally disturbed" that he did the acts as hereinabove described. Likewise, the evidence as to the actual shooting, while undisputed, is reasonably susceptible of conflicting inferences as to the sanity of the insured at that time. A genuine issue of material fact as to whether the insured, Mr. Johnson, was insane when he shot and injured plaintiff therefore existed, and it was error to enter summary judgment in favor of Defendant-Allstate.
Accordingly, the summary final judgment is reversed and the cause remanded for further proceedings consistent with the views herein expressed.
Reversed and remanded.
REED, C.J., concurs.
MAGER, J., concurs specially, with opinion.
MAGER, Judge (concurring specially):
I concur with the conclusion of the majority for similar as well as different reasons.
As I view it, the primary issue in this appeal is whether a genunine issue of material fact exists so as to preclude the entry of summary judgment. In my opinion a genuine issue does exist with respect to whether the bodily injuries inflicted upon the plaintiff were feloniously or intentionally caused by the insured. In order for the *263 defendant insurer to prevail it is necessary to establish that the actions of the insured were caused feloniously or intentionally so as to fall within the policy's exclusionary clause.[1] The burden rests upon the defendant-insurer to bring the case within the policy exclusion. See 18A Fla.Jur., Insurance, § 990; see also Burd v. Sussex Mutual Insurance Company, 1970, 56 N.J. 383, 267 A.2d 7, 15.
This court recently reaffirmed the principle that proceedings for summary judgment may never be used as a substitute for a trial if from the evidence before the court there appears to be a genuine issue of some material fact which must be established in order for either party to prevail. Coquina Ridge Properties v. East West Company, Fla.App. 1971, 255 So.2d 279. Whether or not the injuries caused by the insured were feloniously or intentionally inflicted necessitates the consideration of subjective as well as objective factors including questions of intent and mental capacity of the actor. In such situations justice is best served by a plenary trial on the merits. Ruvolo v. American Casualty Company, supra.
Furthermore, in my opinion, the issue to be determined at trial is not whether the insured was insane when he shot and injured plaintiff  the issue is much more expansive. The issue is whether the injuries received by the plaintiff were caused feloniously or intentionally by the insured. In the consideration of this issue, the mental capacity of the actor will be the determinative factor, i.e., if the actor did not have the mental capacity to have done the act intentionally the exclusionary provision is not applicable and the policy coverage remains operative. However, to let the question of mental capacity turn on the issue of "insanity" is too restrictive and much too susceptible to conflicting meanings. "Insanity" has different standards of measurement depending upon the circumstances of its application. In the area of criminal responsibility it means one thing; medically defined it may take on a much broader meaning.
It would seem to me that the better approach to the determination of the issue of whether an act was intentionally or feloniously caused would be to avoid the categorization created by the term insanity. Instead the question of whether an act was intentional should be determined by the nature and extent of the actor's mental capacity as it bears upon the formation of the requisite intent. In some instances, the evidence may demonstrate the actor's inability to distinguish between right and wrong, thus rendering him incapable of causing an intentional act; in other instances the actor may be able to distinguish between right and wrong, yet his reasoning faculties are so far impaired that he is not able to understand the moral character or the general nature, consequences and effect of the act he has committed; or if it were shown that the actor were suffering from a derangement of his intellect which deprived him of the capacity to govern his conduct in accordance with reason and while in that condition acting on an irrational impulse caused bodily injury to another, his act would not be treated as intentional.
One further observation should be made with respect to the efficacy of the exclusion clause. Considerations of public policy would support the type of exclusion clause involved in the case sub judice. There is however the overriding public interest that the victim be compensated (the *264 victim's rights being derivative from the insured) so that the victim is aided by the narrowest view of the policy exclusion consistent with the purpose of not encouraging an intentional attack. See Burd v. Sussex Mutual Insurance Company, supra. This latter proposition is also consistent with the philosophy of recent legislative and congressional efforts to provide compensation for innocent victims of crime.[2]
NOTES
[1] Absent a determination in a criminal proceeding that the insured committed a crime I would seriously question whether the word "feloniously" has any application to the facts under consideration. As we find in Black's Law Dictionary "feloniously" means "proceeding from an evil heart or purpose done with a deliberate intention of committing a crime." It would seem to me that we are more properly concerned with the acts of the insured intentionally caused.
[2] Among the states that have passed a law providing for the compensation of victims of crime are New York, California, Hawaii, Maryland, Massachusetts and Nevada. Congressional consideration is being given to "The Victims of Crime Act of 1972" which would provide compensation to innocent victims for loss and injury in federal jurisdictions.